UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.:
ARVINDER GILL,

                Plaintiff,

                                                          COMPLAINT

   -against-

MARKETAXESS CORPORATION,               PLAINTIFF DEMANDS
MARKETAXESS HOLDINGS INC., and       A TRIAL BY JURY
MICHAEL BAKER, *Individually*,

                Defendants.
------------------------------------------------------------------X

      Plaintiff, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant(s), upon information and belief, as follows:

**Nature of the Case**

1. Plaintiff complains pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*; the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 296, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-502(a), *et seq.* Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and unlawfully terminated on the basis of Plaintiff's age (62).

**Jurisdiction and Venue**

2. Jurisdiction of this Court is proper under 29 U.S.C. § 626(c) and 28 U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred therein.

**Procedural Prerequisites**

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated June 26, 2020, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

8. Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

**Parties**

9. At all times material, Plaintiff is and was a resident of the township of North Brunswick, State of New Jersey.

10. At all times material, Defendant MARKETAXESS HOLDINGS INC., ("MARKETAXESS HOLDINGS") is and was a foreign business corporation organized pursuant to the laws of the State of Delaware, operating in and existing under the laws of the State of New York.

11. At all times material, Defendant MARKETAXESS HOLDINGS had 20 or more employees for each working day in each of 20 or more calendar weeks in 2018.

12. At all times material, Defendant MARKETAXESS HOLDINGS had 20 or more employees for each working day in each of 20 or more calendar weeks in 2019.

13. At all times material, Defendant MARKETAXESS HOLDINGS was Plaintiff's employer under the ADEA.

14. At all times material, Defendant MARKETAXESS HOLDINGS was Plaintiff's employer under the NYSHRL.

15. At all times material, Defendant MARKETAXESS HOLDINGS was Plaintiff's employer under the NYCHRL.

16. At all times material, Defendant MARKETAXESS HOLDINGS has a Corporate Headquarters located at 299 Park Avenue, 10th Floor, New York, New York 10171 ("Corporate Headquarters")

17. At all times material, Defendant MARKETAXESS HOLDINGS has an office located at 55 Hudson Yards, Floor 15, New York, NY 10001 ("New York Office").

18. At all times material, Defendant MARKETAXESS CORPORATION ("MARKETAXESS CORP") is and was a foreign business corporation organized pursuant to the laws of the State of Delaware, operating in and existing under the laws of the State of New York.

19. At all times material, Defendant MARKETAXESS CORP had 4 or more employees.

20. At all times material, Defendant MARKETAXESS CORP was Plaintiff's employer under the NYSHRL.

21. At all times material, Defendant MARKETAXESS CORP was Plaintiff's employer under the NYCHRL.

22. At all times material, Defendant MARKETAXESS CORP has a Corporate Headquarters located at 299 Park Avenue, 10th Floor, New York, New York 10171 and also operates out of the New York Office.

23. At all times relevant hereto, Defendant MARKETAXESS CORP and Defendant MARKETAXESS HOLDINGS were integrated employers of Plaintiff as they had an interrelation of operations, common management, centralized control of labor relations, and common ownership.

24. Defendant MARKETAXESS CORP and Defendant MARKETAXESS HOLDINGS are hereinafter referred to as MARKETAXESS Defendants.

25. MARKETAXESS Defendants operate from the same Corporate Headquarters and New York Office.

26. At all times material, Defendant MICHAEL BAKER ("BAKER") was an employee of MARKETAXESS Defendants, holding the position of "Chief Technology Officer" ("CTO").

27. At all times material, Defendant BAKER was Plaintiff's supervisor and had supervisory authority over Plaintiff.

28. At all times material, Defendant BAKER had the power to hire Plaintiff.

29. At all times material, Defendant BAKER had the power to fire Plaintiff.

30. At all times material, Defendant BAKER had the power to demote Plaintiff.

31. At all times material, Defendant BAKER had the power to promote Plaintiff.

32. At all times material, Defendant BAKER had the power to directly affect the terms and conditions of Plaintiff's employment.

33. At all times material, Defendant BAKER had the power to direct Plaintiff's daily work activities.

34. MARKETAXESS Defendants and Defendant BAKER are collectively referred to herein as "Defendants."

## Material Facts

35. Plaintiff was hired by MARKETAXESS Defendants in early 2016, for the position of "Senior Quality Assurance Analyst."

36. As a Senior Quality Assurance Analyst, for MARKETAXESS Defendants, Plaintiff worked out of the New York Office and earned a salary of approximately $105,000.00 per year.

37. Plaintiff was qualified for his role working for MARKETAXESS Defendants.

38. Plaintiff's date of birth is September 5, 1957.

39. Plaintiff was 58-62 years of age during the events and incidents alleged in this complaint.

40. Plaintiff's direct supervisor from the date of his hire in early 2016 until his final performance review in December of 2019 was Joseph Merlino.

41. In or around April 2019, MARKETAXESS Defendants hired Defendant BAKER as CTO.

42. Upon information and belief, MARKETAXESS Defendants provide performance reviews for employees using Mid-Year and End-Year Appraisal Reports.

43. MARKETAXESS Defendants' performance reports provide for the employee, their team, and their direct supervisor to provide feedback, with the direct supervisor signing off on the ultimate report.

44. Plaintiff received a Mid-Year Appraisal Report for 2017, 2018, and 2019.

45. Plaintiff received a Year-End Appraisal Report for 2016, 2017, 2018, and 2019.

46. Joseph Merlino was the individual who ultimately signed Plaintiff's Mid-Year and Year-End Appraisal Reports.

47. On or about December 8, 2016, Plaintiff received a "meets expectations" or above average Year-End Appraisal Report.

48. On or about June 26, 2017, Plaintiff received a "meets expectations" or above average Mid-Year Appraisal Report.

49. On or about December 5, 2017, Plaintiff received a "meets expectations" or above average Year-End Appraisal Report.

50. On or about June 22, 2018, Plaintiff received a "meets expectations" or above average Mid-Year Appraisal Report.

51. On or about November 28, 2018, Plaintiff received a "meets expectations" or above average Year-End Appraisal Report.

52. In or around June 2019 Defendant BAKER reassigned supervisors and Plaintiff began reporting to Siewyee Lai instead of Joseph Merlino as part of a division-wide reorganization.

53. On or about June 25, 2019, Plaintiff received a "meets expectations" or above average Mid-Year Appraisal Report.

54. In or around December 2019, upon information and belief, Defendant BAKER forced Joseph Merlino to reduce Plaintiff's performance ratings in the 2019 Year-End Appraisal Report by including negative "opportunity for development" grades in multiple categories.

55. While Joseph Merlino presented Plaintiff with the 2019 Year-End Appraisal Report, he apologized to Plaintiff for the performance reduction and stated that the reduction was forced upon him by Defendant BAKER.

56. Upon information and belief, the positive team input given for Plaintiff's 2019 Year-End Appraisal Report was essentially ignored as Defendant BAKER instructed Joseph Merlino to reduce Plaintiff's overall review.

57. Upon information and belief, Defendant BAKER pressured Plaintiff's supervisor to provide a worse than factually based 2019 Year-End Appraisal Report in an attempt to develop pretextual reasons to unlawfully terminate Plaintiff due to his age.

58. From the time CTO Defendant BAKER was hired until Plaintiff's unlawful termination, Plaintiff's supervisor Joseph Merlino warned Plaintiff on multiple occasions regarding his job security.

59. Specifically, Joseph Merlino stated to Plaintiff that Defendant BAKER sought to terminate older employees on the various teams under Defendant BAKER's control and replace them with younger employees.

60. Joseph Merlino advised Plaintiff of various job opportunities and encouraged Plaintiff to interview elsewhere.

61. In or around December 2019, Joseph Merlino told Plaintiff about a job opportunity with a different company seeking a Senior Quality Assurance Analyst.

62. Plaintiff did not want to find a new place of employment, as he had been successfully employed in his role working for MARKETAXESS Defendants for approximately 4 years.

63. Plaintiff feared the difficulty he may have looking for new employment as a person over 60 years of age.

64. Upon information and belief, in or around the beginning of January 2020, MARKETAXESS Defendants' Applications Developer Manager, Christine Nolan, approached Plaintiff's new

supervisor Siewyee Lai and stated that MARKETAXESS Defendants were going to terminate Plaintiff's employment.

65. Upon information and belief, during that conversation, Siewyee Lai replied to Christine Nolan, in sum and substance, that they cannot survive without Plaintiff because he knew the whole trading system.

66. Upon information and belief, Siewyee Lai also stated to Christine Nolan, in sum and substance, that they "need" Plaintiff.

67. Upon information and belief, during that conversation, Christine Nolan asked Siewyee Lai if Plaintiff's termination would affect her team, and Siewyee Lai responded in sum and substance that losing Plaintiff would be "a blow" to their team.

68. Upon information and belief, Siewyee Lai asked Christine Nolan for the reasons for Plaintiff's termination, and Christine Nolan replied that it was regarding complaints about Plaintiff's performance.

69. Upon information and belief, Christine Nolan asked Siewyee Lai if there would be any impact on the Team/Project if Plaintiff was terminated. Siewyee Lai replied in sum and substance, that the team could not afford to lose him.

70. Upon information and belief, prior to Plaintiff's unlawful termination, Joseph Merlino stated to Defendant BAKER, in sum and substance, that the team did not want to lose Plaintiff, and that he agreed with Siewyee Lai that no one on the team was complaining about Plaintiff.

71. Upon information and belief, in or around January 2020, Joseph Merlino asked Defendant BAKER why Defendants planned to terminate Plaintiff's employment. Upon information and belief, Defendant BAKER did not respond with any explanation and told Joseph Merlino to "forget it."

72. Upon information and belief, on or about February 11, 2020, Defendant BAKER instructed Christine Nolan to inform Plaintiff that his employment was being terminated.

73. On or about February 11, 2020, Defendants, at Defendant BAKER's direction, terminated Plaintiff's employment citing "unsatisfactory performance."

74. Defendants' cited reason for terminating Plaintiff was wholly pretextual as his performance was falsely reflected in his 2019 Year-End Appraisal Report, which Defendant BAKER insisted be marked negative without justification.

75. Based on Defendant BAKER's own comments to other supervisors working for MARKETAXESS Defendants, it is clear that he had a discriminatory animus towards Plaintiff that substantially contributed to his decision to negatively influence Plaintiff's 2019 Year-End Appraisal Report and subsequently terminate him.

76. Defendant BAKER sought to fabricate a pretextual reason to terminate Plaintiff, with the true reason being Plaintiff's age: 62.

77. Upon information and belief, Defendant BAKER, as part and parcel of his scheme to develop a pretextual reason for unlawfully terminate Plaintiff, Defendant BAKER exerted undue pressure and leverage on Plaintiff's former supervisor to artificially reduce Plaintiff's 2019 Year-End Appraisal Report.

78. Upon information and belief, Defendants did not contact or speak with Plaintiff's team regarding his performance before terminating his employment.

79. Upon information and belief, Plaintiff's team was shocked and angered upon hearing of Plaintiff's termination.

80. Upon information and belief, due to the non-factually based reduction in Plaintiff's 2019 Year-End Appraisal Report, Defendants unlawfully withheld Plaintiff's year-end bonus, which he should have received and to which he was entitled.

81. MARKETAXESS Defendants knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

82. But for Defendant BAKER's position working for MARKETAXESS Defendants, he would not have been able to subject Plaintiff to the discriminatory treatment and termination he suffered.

83. But for Plaintiff's age, he would not have been terminated from his position or otherwise discriminated against.

84. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful termination and discrimination.

85. The above are just some of the ways Defendants regularly and continually harassed and discriminated against Plaintiff while employing Plaintiff.

86. But for Plaintiff's age (62), Defendants would not have treated Plaintiff this way.

87. Defendants treated Plaintiff this way solely due to Plaintiff's age (62).

88. Defendants acted intentionally and intended to harm Plaintiff.

89. Defendants unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

90. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendants.

91. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

92. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

93. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

94. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

95. Further, Plaintiff is entitled to liquidated damages in an amount to be determined at trial, because MARKETAXESS Defendants willfully violated the ADEA by discriminating against Plaintiff.

## First Cause of Action for Discrimination
## Under the ADEA
## (Not Against Individual Defendant)

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. The ADEA, at 29 U.S.C. § 623(a), titled "Employer Practices," provides that:

> It shall be unlawful for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

98. MARKETAXESS Defendants violated the section cited as set forth.

99. Further, MARKETAXESS Defendants' discrimination against Plaintiff due to Plaintiff's age (62) constitutes a willful violation of 29 U.S.C. § 626(b).

**Second Cause of Action for Discrimination
Under the New York State Executive Law
(Against all Defendants)**

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

102. Defendants violated the section cited as set forth.

**Third Cause of Action for Discrimination
Under the New York State Executive Law
(Not Against Corporate Defendants)**

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105. Defendant BAKER violated this statute as set forth.

## Fourth Cause of Action for Discrimination
## Under the New York City Administrative Code
## (Against all Defendants)

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

108. Defendants violated the section cited as set forth.

## Fifth Cause of Action for Discrimination
## Under the New York City Administrative Code
## (Not Against Corporate Defendants)

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

111. Defendant BAKER violated the section cited herein as set forth.

## Sixth Cause of Action: Vicarious Liability
## Under the New York City Administrative Code
## (Not Against Individual Defendant)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor." It provides that:

>     a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
>     b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
>
>     c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

114. MARKETAXESS Defendants violated the section cited as set forth.

### Jury Demand

115. Plaintiff requests a jury trial on all issues to be tried.

### Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

    A. Declaring that Defendants engaged in unlawful employment practices prohibited by Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*; and the New York

City Administrative Code, § 8-107, *et seq.*, in that Defendants discriminated against Plaintiff based on Plaintiff's age (62) and unlawfully terminated Plaintiff's employment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff liquidated damages;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff prejudgment interest;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
July 16, 2020

                              **PHILLIPS & ASSOCIATES,**
                              **ATTORNEYS AT LAW, PLLC**

By: _____
Steven Fingerhut
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com